UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

LIBERTY MEDIA HOLDINGS, LLC,

                Plaintiff,            12-Civ-02234 (LAK)

   against

CARY TABORA and SCHUYLER WHETSTONE,

                Defendants.

-------------------------------------------------------------------------X

**REPLY IN SUPPORT OF MOTION BY DEFENDANT TABORA FOR EXTENSION OF TIME TO ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT**

      Plaintiff's twenty-paragraph, two-exhibit response to Defendant's motion for extension of time highlights the extent to which a corporation with substantial assets is willing to assert its economic advantage over an individual defendant having much more limited means.

      Because the relief at issue - a simple request for extension of time - is normally one of the most basic courtesies extended at the commencement of most lawsuits, this reply will very briefly address the points raised in Plaintiff's response.

**Defendant Did not Evade Process or "Game the System"**

      1.      Plaintiff did file an earlier lawsuit against Defendant in California. At that time, as at present, Defendant resided in New York. He so stated in a declaration filed there with the Court, a copy of which is annexed hereto as Exhibit 1.

      2.      Plaintiff notes that its California counsel contacted Defendant directly on April 11, 2012. This direct communication with Defendant raises an interesting point. Defendant had been represented by counsel in the California lawsuit. As evidenced by Plaintiff's Exhibit 1, Plaintiff's counsel in that case acknowledged as much, and yet contacted Defendant directly nonetheless. The "Marc John Randazza" of that communication is the same attorney who spoke to me on the phone on May 4, then acting in the role of Plaintiff's "in-house" counsel. (Mr. Randazza represented Plaintiff in the California lawsuit.) Whether

1

Defendant's California counsel had elected to respond to Mr. Randazza's alleged attempt to contact him or not, Mr. Randazza's email demonstrates an attempt by an attorney to apply direct pressure on an individual Defendant who he knew had been represented in an earlier lawsuit - the pressure being either to accept service immediately and receive an extension, or accept formal service and have plaintiff grant no extension.

    3.    While noting that Defendant "refused to respond" to what was at best a questionable direct contact from an opposing counsel (though no obligation to respond existed), Plaintiff then complains that Defendant "forced Liberty to engage and pay for a private investigator," who somehow determined that Defendant resided with his parents in Florida - despite the fact that Defendant, as he indicated in his declaration in California, has lived in New York for years, and continues to reside here.

    4.    Indeed, Plaintiff's Complaint states "On information and belief, Defendants are individuals, both residing in New York State." (Complaint para. 10.) If Defendant did live in Florida, then Plaintiff (a) should have so alleged in its Complaint and (b) faces the same problem here that it faced in its California lawsuit - this Court's potential lack of jurisdiction over Defendant.

    5.    As Plaintiff's counsel correctly states, I contacted his firm on April 11 seeking an extension of time to answer or respond to the Complaint. Plaintiff's counsel initially agreed, and I drafted the usual stipulation providing the additional time. It was not until I submitted the stipulation to counsel that he added the "default" penalty - one I have never encountered in more than twenty years of practice in this Court. Given that my client is an individual with very limited means, and was at the time still searching to see whether he could secure pro bono representation, I was not willing to tie his hands by committing him to a default judgment in the event he required more time to prepare his defense. Plaintiff, however, refused to remove the "default" condition to the stipulation, even when I pointed out that if Defendant were to seek additional time, it would be in the form of a motion (such as this one) which Plaintiff could then oppose (as it has done here).

    6.    As noted in my moving papers, I accepted service at my client's Direction on April 18, 2012 because - inexplicably - Plaintiff's process server had paid yet another visit to my client's parent's

house in Florida in an attempt to re-serve my client.  My client was unwilling to allow his parents to continue to be harassed by these visits, and so instructed me to accept service.

### There is Good Cause for the Requested Extension

7. Plaintiff incorrectly states that no good cause has been shown for the requested extension. This ignores the fact that my May 4 request for a two week extension was responded to with a proposal initiated by Plaintiff's "in-house" counsel, Mr. Randazza, that the parties engage in settlement discussions.  At the beginning of that conversation, Mr. Santori introduced Mr. Randazza by stating that they thought that "instead of getting into motion practice that might not be necessary, we could try to work out some sort of resolution here."  Mr. Randazaa then took over, and proposed certain settlement terms, which as I stated in my moving papers, are still under consideration (discussions having been needlessly interrupted by the necessity for this motion).

8. Plaintiff goes on at length, citing cases and arguing that no good cause exists for the extension.  As indicated in the moving papers, discussion of the settlement that Plaintiff itself proposed is the reason for the request, coupled with the very reasonable simultaneous need to have some period of time to prepare a response in the event the settlement discussions are not successful.  My client is a student whose means are extremely limited.  To be engaging simultaneously in settlement negotiations while preparing a response to Plaintiff's Complaint would be unreasonably burdensome.

9. But being unreasonably burdensome may be one of Plaintiff's strategies in this lawsuit. As a much better-funded opponent, it very much holds the upper hand.  As indicated when I made my initial request for a 30-day extension (which was met by the "default" condition) and my most recent request for a two-week extension (met first by a settlement proposal and now, by a demand for an immediate response if a settlement is not reached), it is Plaintiff that is being unreasonable.

10. Ironically, Plaintiff chose to wait until twenty minutes after I had filed the present motion to file the affidavit of service of the Summons upon the Florida address it has attributed to Defendant (see docket entry 7).  The docket text accompanying that entry reads, in part "AFFIDAVIT OF

3

SERVICE of Summons and Complaint. Cary Tabora served on 4/11/2012, answer due 6/11/2012."

Defendant is of course willing to abide by this June 11, 2012 date.


Dated: May 8, 2012

                                Kelly D. Talcott

                                By: /s/ Kelly D. Talcott_____

The Law Offices of Kelly D. Talcott
34 Grove Street, P.O. Box 43
Sea Cliff, New York 11579
v.516.515.1545
f.516.871.0682
Kelly@kdtalcott.com

Attorney for Defendant Cary Tabora

## CERTIFICATE OF SERVICE

I, Kelly D.Talcott, an attorney, hereby certify that on May 8, 2012, I electronically transmitted the foregoing Motion for Extension of Time To Answer or Otherwise Respond to Plaintiff's Complaint to the Clerk's Office using the ECF System for filing and transmittal to counsel for plaintiff.

      /s/ Kelly D. Talcott
      Kelly D. Talcott