UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

**LIBERTY MEDIA HOLDINGS, LLC,**

            **Plaintiff,**                  12-Civ-02234 (LAK)

  against

**CARY TABORA and SCHUYLER WHETSTONE,**

           **Defendants.**

------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TABORA'S MOTION TO DISMISS THE COMPLAINT

Defendant Cary Tabora, by and through his undersigned counsel, respectfully submits this Memorandum of Law in support of his Motion to Dismiss the complaint of plaintiff Liberty Media Holdings, LLC ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I. PRELIMNIARY STATEMENT

Plaintiff is a producer and distributor of adult film and related content, which it markets through its brand name "Corbin Fisher." Plaintiff has accused Mr. Tabora of illegally sharing its motion picture titled "Down on the Farm," also described in the complaint as "Corbin Fisher's Down on the Farm." Contrary to the allegations in the complaint, neither title is registered with the United States Copyright Office. Accordingly, under the prevailing law of this Circuit, Plaintiff fails to state a cause of action both for copyright infringement and for contributory copyright infringement.

Plaintiff also asserts a state law count against Tabora for negligence. Because, however, the grounds for this claim are virtually the same as those for contributory copyright infringement, Plaintiff's negligence count is preempted by the Copyright Act and must be dismissed.

1

## II. FACTUAL BACKGROUND - COPYRIGHT

Plaintiff alleges that an Internet Protocol (or "IP") address assigned to Tabora's Internet access account by his Internet Service Provider was used to share Plaintiff's film that was either titled "Corbin Fisher's Down on the Farm,"[1] or simply "Down on the Farm".[2] Plaintiff claims the first title - "Corbin Fisher's Down on the Farm" - was registered with the United States Copyright Office under registration number PA 1-698-357,[3] and also claims that the second title - "Down on the Farm" - was likewise registered with the United States Copyright Office under the exact same registration number.[4]

Neither of these titles, however, corresponds with the title actually listed by the Copyright Office for registration number PA 1-698-357: "Corbin Fisher Amateur College Men Down on the Farm."[5] Furthermore, a search of the Copyright Office database failed to turn up any registrations in plaintiff's name either for "Corbin Fisher's Down on the Farm," or for "Down on the Farm," the two titles at issue in this lawsuit.[6]

Plaintiff thus has no Copyright registrations for either of the titles listed in its complaint. As will be explained below, the lack of any Copyright registration for "Corbin Fisher's Down on the Farm" and "Down on the Farm" requires the dismissal of Plaintiff's copyright infringement and contributory copyright infringement claims for failure to state a cause of action.

## III. FACTUAL BACKGROUND - NEGLIGENCE

Plaintiff's negligence allegations are as follows: Tabora is accused of knowingly allowing his roommate (co-defendant Whetstone) to distribute Plaintiff's motion picture (which,

---

[1] Complaint para. 1.
[2] Complaint paras. 14 and 30. Both titles are referenced, without explanation, in the Complaint.
[3] Complaint para. 1.
[4] Complaint para. 30.
[5] Talcott Decl. para. 2.
[6] Talcott Decl. paras. 3, 4.

for convenience sake, will be referred to herein as "Down on the Farm") using a shared Internet connection that was registered in Tabora's name.  The complaint alleges that Tabora "had full knowledge that Whetstone regularly used Tabora's Internet connection for the criminal purpose of pirating copyrighted content, yet Tabora continued to permit Whetsone to use his Internet connection for that purpose" and that "Tabora stated emphatically, 'I was negligent.'"[7]

Plaintiff alleges in the body of the negligence count that "Tabora's negligent actions allowed Whetstone and others to unlawfully copy and distribute[8] Plaintiff's copyrighted Motion Picture, proximately causing financial harm to Plaintiff."[9]  The underlying wrong being alleged here is thus copyright infringement, with Mr. Tabora accused of contributing to others' infringing actions.

Plaintiff goes on to allege that "Tabora was aware that Whetstone used Tabora's Internet connection to copy and redistribute the Plaintiff's intellectual property without authorization.  In doing so, Tabora negligently caused harm to the Plaintiff in the form of lost sales and reputational damage."[10]  Here too, the wrong alleged is copyright infringement by Whetstone, with contributing help from Mr. Tabora.

Plaintiff then alleges, in sum, that Tabora was aware of Whetstone's infringement; that he told Whetstone he was likely to get caught if he didn't stop; that he told Whetstone that Whetstone could end up as a defendant in a lawsuit if he did not stop, but that Tabora nevertheless continued to allow Whetstone to use the Internet connection registered in Tabora's

---

[7] Complaint para. 4. (In the event this suit moves forward, Tabora will dispute these allegations; for purposes of this motion only, however, their truth must be assumed.)
[8] Much of the Complaint is devoted to a purported explanation of the bittorrent protocol, which is a software tool that permits data file sharing.  Resolution of this motion does not turn on this explanation, aside from accepting that bittorrent allows multiple parties to exchange digital data files over the Internet, and appreciating that it is alleged by Plaintiff to be the means by which "Down on the Farm" was shared.
[9] Complaint para. 49.
[10] Complaint para. 50.

name.[11]  Again, Mr. Tabora is cast in a contributing role; not the primary infringer, but one who allegedly provided knowing assistance to the primary infringer.

The Complaint's negligence count next posits a duty wholly unsupported in law: "Internet subscribers have a duty to prevent others from using their own Internet connections for illegal purposes," and then twice "heightens" that invented duty depending on whether the account holder knows that the "illegal purpose is a federal crime" - namely, "copyright infringement."[12]  The next paragraph reiterates this: "Tabora had a specific and heightened duty to prevent Whetstone from using his Internet connection for this illegal and criminal purpose" - that purpose being, of course, copyright infringement.[13]  The alleged duty was "higher still since, on information and belief, Tabora had actual knowledge that Whetstone was causing damage to the Plaintiff" (by engaging in copyright infringement).[14]  Here too, Mr. Tabora is accused of facilitating the infringing actions allegedly committed by Mr. Whetstone.

The consequence of Tabora's breach of this alleged duty?  Damages, in the amount of 840 lost sales times $60 per sale, a total of $50,400;[15] in other words, the revenues attributable to 840 sales of "Down on the Farm" that Plaintiff did not receive because of Whetstone's alleged infringement.

## IV. ARGUMENT

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) if it fails to state a claim upon which relief can be granted.[16]  When deciding a 12(b)(6) motion, the Court accepts as true the complaint's well-pleaded factual allegations, drawing all reasonable inferences in the

---

[11] Complaint paras. 51-53.
[12] Complaint para. 54.
[13] Complaint para. 55.
[14] Complaint para. 56.
[15] Complaint para. 57.
[16] *See Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910 (2007).

4

plaintiff's favor.[17]  The Court is further permitted to consider the full text of documents that are incorporated in the complaint by reference or that are "integral" to the complaint.[18]  In particular, "'when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss"[19]  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." [20]

### A. Because There is no Copyright Registration for the Film at Issue, Plaintiff's Copyright Causes of Action Must be Dismissed

To state a clam for copyright infringement, the plaintiff must claim (1) ownership of a valid copyright in a work, and (2) the copying of elements of the work that are original.[21]  "Similarly, one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer."[22]  The existence of a valid copyright is thus an element of both causes of action.

Section 411 of the Copyright Act states that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."[23]  While section 411(a)'s registration requirement "does not restrict a federal court's subject-matter jurisdiction," it is a

---

[17] *Flores v. S. Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003); *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001), *cert. denied*, 535 U.S. 1054 (2002).
[18] *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).
[19] *Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995).
[20] *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), *citing Int'l Audiotext Network, Inc.* at 72.
[21] *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282 (1991); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).
[22] *Gershwin Publishing Corp. v. Columbia Artists Man., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)
[23] 17 U.S.C. §411(a).

"precondition to filing a claim."[24]  In sum, the "Copyright Act . . . requires copyright holders to register their works before suing for copyright infringement."[25]

Contrary to its allegations in the complaint, Plaintiff has not registered the motion picture (or pictures, since it has listed two title names) at issue in this case; a comprehensive search of the Copyright Office database yielded no results for any filings under Plaintiff's name for either title.[26]  To reiterate: according to the complaint, the allegedly infringed film is either titled "Corbin Fisher's Down on the Farm" or simply "Down on the Farm."  Neither of those titles is registered in Plaintiff's name with the U.S. Copyright Office.

The registration number cited in the complaint - PA 1-698-357 - relates to yet a third title: "Corbin Fisher Amateur College Men Down on the Farm."[27]  There is no claim in the complaint that any defendant has infringed this third work.

Plaintiff's copyright infringement and contributory copyright infringement claims are thus based on the alleged infringement of one (or two) unregistered works.  Because neither title has been registered with the U.S. Copyright Office, Plaintiff is not able to allege that it has "ownership of a valid copyright in a work" -- the first element of a cause of action for both copyright infringement and contributory copyright infringement -- and so plaintiff's first two causes of action must be dismissed.

### B. The Copyright Act Preempts Plaintiff's Negligence Claim

In the first instance, if the two copyright causes of action are dismissed, the negligence cause of action should be dismissed as well; while the parties appear to be diverse, the damage

---

[24] *Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237, 1241 (2010).
[25] *Id.*  See also *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242, 262 and n.2 (2d Cir. 2011) ("Unregistered copyright holders may not maintain a suit for copyright infringement.")
[26] *See* Talcott Decl. paras. 3, 4.
[27] Talcott Decl. para. 2.

alleged ($50,400) does not meet the minimum of $75,000 required by 27 U.S.C. §1332(a) to give this Court jurisdiction over the claim.[28]

Independent of this, the negligence claim should be dismissed because it is preempted by the Copyright Act. Section 301(a) of the Copyright Act preempts

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103....[29]

Excluded from the scope of section 301(a)'s preemption are

> any rights or remedies under the common law or statutes of any State with respect to . . . . (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106;….[30]

Under section 301(a), a state-law cause of action is preempted by the Copyright Act when "(1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle[s] of exclusive rights already protected by copyright law."[31] The first prong of this test is known as the "subject matter requirement;" it is satisfied in the present case because the work that was allegedly distributed and is the subject of Plaintiff's negligence claim, "Down on the Farm," is the type of work that "falls within the ambit of copyright protection."[32]

---

[28] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."), *cited in Cave v. East Meadow Union Free School Dist*., 514 F.3d 240, 250 (2d Cir. 2008).
[29] 17 U.S.C. §301(a).
[30] 17 U.S.C. §301(b).
[31] *Briarpatch Ltd. L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004), *citing* 17 U.S.C. §301(a) and *Nat'l Basketball Ass'n v. Motorola, Inc*., 105 F.3d 841, 848 (2d Cir. 1997).
[32] *Nat'l Basketball Ass'n*, 105 F.3d at 848.

The second prong of the preemption test is known as the "general scope requirement,"[33] and is satisfied (so that the state law claim is preempted) "when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law."[34]  More specifically, "for a state cause of action to survive preemption, it must have an 'extra element' beyond reproduction, preparation of derivative works, distribution, performance or display, which 'changes the nature of the action so that it is qualitatively different from a copyright infringement claim."[35]  "Elements such as awareness or intent, which alter the action's scope but not its nature, will not save it from preemption under §301."[36]

The complaint alleges that Tabora owed plaintiff a duty to stop Whetstone from using the Internet connection registered in Tabora's name to distribute "Down on the Farm."  When Tabora failed to do so, Whetstone was then able to distribute "Down on the Farm" to some 840 individuals, which damaged Plaintiff because it lost those sales.  Plaintiff's negligence claim is no different than its contributory copyright infringement claim because each element of Plaintiff's negligence claim has a contributory copyright infringement analogue.

"To establish a cause of action sounding in negligence, a plaintiff must establish the existence of a duty on defendant's part to plaintiff, breach of the duty and damages."[37]  A defendant may be liable for contributory copyright infringement if "with knowledge of the infringing activity," the defendant "induces, causes, or materially contributes to the infringing conduct of another."[38]  To satisfy the "materially contributes" requirement, Plaintiff must in this case show that Tabora (1) had actual or constructive knowledge that Whetstone's was infringing

---

[33] *Id.*
[34] *Briarpatch Ltd.*, 373 F.3d at 305.
[35] *Gusler v. Fischer*, 580 F.Supp.2d 309, 316 (SDNY 2008), *quoting Computer Assocs. Int'l. Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992).  *See also Medtech Prods. Inc. v. Ranir, LLC*, 596 F.Supp.2d 778, 817 (SDNY 2008).
[36] *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F.Supp. 1523, 1535 (SDNY 1985).
[37] *Greenberg, LLP v. HSBC Bank*, 17 N.Y.3d 565, 576 (Ct.App. 2011).
[38] 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyrights* §12.04 (Matthew Bender, Rev. Ed.); accord, *Gershwin Publishing*, 443 F.2d at 1162.

Plaintiff's copyright, and (2) encouraged or assisted Whetstone's infringement, or provided machinery or goods that facilitate the infringement (except where the equipment is "capable of substantial noninfringing uses," which of course an Internet connection is).[39]

The elements of Plaintiff's negligence cause of action tracks the elements of its contributory copyright infringement cause of action.  First, the alleged "duty" arose, according to the complaint "[o]nce Tabora learned that Whetstone was using his Internet connection for the wholesale, unlicensed and willful distribution of the Plaintiff's works."[40]  This alleged "duty" is no different than the element of contributory copyright infringement that affixes liability where the defendant, "with knowledge of the infringing activity," helped another to infringe

Next, the alleged breach of that duty arose when "[d]espite Tabora's full knowledge of Whetstone's activity and the illegal nature thereof," he "continued to allow Whetstone to access Tabora's Internet connection."[41]  This corresponds to the element of contributory copyright infringement that requires the defendant to have "materially contribute[d] to the infringing conduct of another."

Finally, as a result of the alleged breach of the claimed duty, "the Plaintiff lost at least 840 total sales, at the rate of at least $60 per sale."[42]  These damages are equally available as a remedy to contributory copyright infringement; 17 U.S.C. §504(b) states that "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement . . . ."

Plaintiff's negligence claim thus "seeks to protect" the exact same right - Plaintiff's right to distribute "Down on the Farm" and benefit from that distribution - as does its contributory

---

[39] *Matthew Bender & Co. v. West Pub. Co,* 158 F.3d 693, 706 (2d Cir. 1998); *see also Sony Corp. of Amer. v. Universal City Studios, Inc.* 464 U.S. 417, 442, 104 S.Ct. 774 (1984).
[40] Complaint para. 55.
[41] Complaint para. 53.
[42] Complaint para. 57.

copyright infringement claim. The negligence claim is based on the same theory of liability as contributory infringement, namely Tabora's alleged knowledge of Whetstone's infringement and his assistance in that infringement by continuing to provide Internet access. The rights Plaintiff seeks to enforce with its negligence cause of action are those granted by copyright law. Accordingly, Plaintiff's negligence cause of action is preempted by the Copyright Act.

The relatively sparse case law on this issue confirms this result. In *Dielsi v. Falk*, the court found that the plaintiff's negligence claim "merely recharacterizes a copyright infringement claim as one for negligence," and noted that calling it "negligence" "does not add a legally cognizable additional element because a general claim for copyright infringement is fundamentally one founded on strict liability."[43] In *Parker v. YAHOO!, Inc.*, the court dismissed plaintiff's negligence count as preempted because the plaintiff's "state law claims cover rights equivalent to those conferred by copyright."[44] The court in *Bridgeport Music, Inc. v. 11C Music* found that "the negligence claim . . . simply echoes the copyright claims Plaintiffs have asserted elsewhere, arguing in essence that the Defendants had a 'duty' to avoid infringing and that they 'breached' that duty by, in fact, infringing."[45] This, of course, is precisely what Plaintiff is doing in this case.

## V. CONCLUSION

Plaintiff's two copyright infringement causes of action should be dismissed because there is no copyright registration for either of the two titles at issue. Its claim for negligence should be dismissed as preempted by the Copyright Act.

---

[43] *Dielsi v. Falk*, 916 F.Supp. 985, 992-93 (C.D. Cal. 1996).
[44] *Parker v. YAHOO, Inc.*, 2008 WL 4410095 (E.D. Pa. September 25, 2008).
[45] *Bridgeport Music, Inc. v. 11C Music*, 154 F.Supp.3d 1330, 1335 (M.D. Tenn. 2001).

Dated: June 8, 2012

        Kelly D. Talcott

        By: /s/ Kelly D. Talcott_____

        The Law Offices of Kelly D. Talcott
        34 Grove Street, P.O. Box 43
        Sea Cliff, New York 11579
        v.516.515.1545
        f.516.871.0682
        Kelly@kdtalcott.com

        Attorney for Defendant Cary Tabora

## CERTIFICATE OF SERVICE

I, Kelly D.Talcott, an attorney, hereby certify that on June 8, 2012, I electronically transmitted the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TABORA'S MOTION TO DISMISS THE COMPLAINT to the Clerk's Office using the ECF System for filing and transmittal to counsel for plaintiff.

                                                      /s/ Kelly D. Talcott
                                                        Kelly D. Talcott