UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT OF NEW YORK
-----------------------------------------------------------------X
LIBERTY MEDIA HOLDINGS, LLC

                Plaintiff,                    12 Civ. 2234 (LAK)

    -against-

CARY TABORA and SCHULYER
 WHETSTONE,

                Defendants.
-----------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT TABORA'S MOTION TO DISMISS


NESENOFF & MILTENBERG, LLP
Attorneys for Plaintiff
363 Seventh Avenue - 5th Floor
New York, New York 10001
(212) 736-4500

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION....................................................................……..............................1

BACKGROUND.......................................................................................................1

ARGUMENT…………………………………………………………………………...4

    A.  The Negligence Cause of Action is not Preempted, and is Distinct Enough to Survive as its own Cause of Action ……………………………………………..4

    B.  Not Only is the Negligence Cause not Preempted, but it is Viable under Traditional Laws of Negligence……………………………………………...9

    C.  Is there any Duty to Stop Known Criminal Activity?...................................11

    D.  The Name of the Motion Picture at Issue…………………………………...14

CONCLUSION ........................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                    **Page**

*Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876 (2d Cir. 2011). ...................5

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 306 (2d Cir. 2004)...................7

*Cherokee Ins. Co. by & ex rel. Weed v. E.W. Blanch Co.*, 66 F.3d 117 (6th Cir. Tenn. 1995).....12

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992).............................5,7

*Dielsi v. Falk*, 916 F. Supp. 985 (N.D. Cal. 1996).................................................................7,8

*Gary Friedrich Enters., LLC v. Marvel Enters.*, 713 F. Supp. 2d 215, 227 (S.D.N.Y. 2009).......7

*Harper & Row, Publishers v. Nation Enters.*, 723 F.2d 195 (2d Cir. 1983)..........................5

*Magarian v. Hawkins*, 321 F.3d 235 (1st Cir. 2003)..............................................................13

*Marvullo v. Gruner + Jahr AG & Co.*, 2001 U.S. Dist. LEXIS 266 (S.D.N.Y. Jan. 16, 2001)....8

*Mesman v. Crane Pro Servs.*, 409 F.3d 846 (7th Cir. 2005).................................................13

*Miyamoto v. Otis Elevator Co.*, 1994 U.S. App. LEXIS 14272 (9th Cir. Haw. June 9, 1994)....12

*Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841(2d Cir. 1997)..................................5

*NBA v. Motorola*, 105 F.3d 841 (2d Cir. 1997).....................................................................7

*Roberge v. Hannah Marine Corp.*, 1997 U.S. App. LEXIS 21655
    (6th Cir. Mich. Aug. 13, 1997).....................................................................................12

*Rodi Yachts, Inc. v. National Marine, Inc.*, 984 F.2d 880 (7th Cir. 1993)............................13

*Salem v. United States Lines Co.*, 370 U.S. 31 (U.S. 1962)..................................................12

*Shadday v. Omni Hotels Mgmt. Corp.*, 477 F.3d 511(7th Cir. 2007).....................................13

*Smith v. Weinstein*, 578 F. Supp. 1297, 1307 (S.D.N.Y. 1984), 738 F.2d 419 (2d Cir. 1984)......5

*Smythe v. Am. Red Cross Blood Svcs*, 797 F. Supp. 147 (N.D.N.Y. 1992)..........................12

*Spitz v. Boston Edison Co.*, 2 Mass. L. Rep. 558 (Mass. Superior Ct. 1994).......................13

*Surles v. Greyhound Lines, Inc.*, 474 F.3d 288 (6th Cir. 2007)..........................................13

*Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488 (5th Cir. 1990)...............…................7

*The T.J. Hooper*, 60 F2d 737 (2d Cir. 1932)......................................................................11

*Tokio Marine Mgmt. v. M/V Zim Tokyo*, 1995 AMC 2263 (S.D.N.Y. 1995)..................…....12

*Wild v. NBC Universal, Inc.*, 788 F. Supp. 2d 1083 (C.D. Cal. 2011)...............…................7

**Statutes & Rules**

17 USC § 106.......................................................................................................................5

17 USC § 301(a), (b).............................................................................................................4

Plaintiff Liberty Media Holdings, by and through its undersigned counsel, respectfully submits this Memorandum of Law in Opposition to Defendant Tabora's Motion to Dismiss.

## I. INTRODUCTION

Defendant Tabora seeks to dismiss Liberty's claims on two grounds: 1) Liberty has failed to state a claim due to the discrepancy of titling differences; 2) Liberty's negligence count is preempted by the Copyright Agreement. The first issue is either not grounds for dismissal, or is easily amendable. The second is disputed as well. While negligence may be preempted when a copyright claim is brought directly against a defendant, it is not preempted under the facts of this case and the specific claims brought against Tabora.

## II. BACKGROUND

The Plaintiff Liberty Media Holdings, LLC brought a claim against Defendant Cary Tabora for, *inter alia*, negligence. The Defendant moved to dismiss on multiple grounds, one being that the Plaintiff's negligence claim is preempted by the Copyright Act. Additionally, the Electronic Frontier Foundation has filed an alarmist brief in support of Mr. Tabora, which should be discounted and discredited for the irrelevant hysteria that it is. This case is not about Starbucks, nor about airports. This case is about a specific set of facts.

Tabora's arguments regarding the Plaintiff's copyrights being improperly registered is wholly without merit and will be dispensed with in a short argument at the end of this brief. The key dispute between the parties at this point, and thus the key matter of law for this Court to resolve is whether or not the negligence claim is preempted and, if not, whether the Court may recognize a duty to prevent known unlawful activity, when a party knows that another party will use his Internet connection for that unlawful purpose.

Since the negligence claim is based on rights and elements that are <u>not</u> equivalent to those protected by the Copyright Act, it is not preempted. The duty the Plaintiff asks the Court to recognize is an extension of existing law, as no court has (to date) recognized this specific duty within this specific context. Tabora stated, "I was negligent" when confronted with Whetstone's use of his Internet connection. ECF 1 ¶ 4. This is the context in which the negligence claim should be viewed.

With respect to the duty, the Plaintiff acknowledges that it is asking this Court to recognize a duty that has never been *factually* before a court in the past. However, the duty that the Plaintiff seeks to have this Court recognize is a duty to refrain from <u>knowingly</u> providing the instrumentalities of unlawful activity to another person when he knows full well that that person is, has been, and will continue to use those instrumentalities to cause a specific harm. In this case, that harm is copyright infringement, but the duty would not be limited to this one specific harm. To be clear, the Plaintiff does not argue that there is a duty upon all Internet account holders to <u>police</u> <u>and</u> <u>prevent</u> criminal activity on their Internet connection. The Plaintiff takes the position that the defendant here had a duty because he had <u>knowledge</u> of the primary wrongdoer's actions.

This case against Mr. Tabora is based on the following simple premise: Mr. Whetstone committed an act of copyright infringement against the Plaintiff. ECF 1 ¶ 32. Mr. Whetstone did so by using BitTorrent technology. *Id.* Whetstone needed an Internet connection in order to commit this offense, which caused approximately $50,000 worth of damage to the Plaintiff. ECF 1 ¶ 32, 49, 57. That Internet connection was provided by Mr. Tabora. ECF 1 ¶ 4.

If this were the end of the story, Liberty would not seek to hold Mr. Tabora liable. However, Tabora provided the Internet connection to Mr. Whetstone and then discovered that

Mr. Whetstone was continually committing copyright infringement by using the BitTorrent technology. ECF 1 ¶ 4. Mr. Tabora knew this was illegal. ECF 1 ¶ 6, 53-55. Mr. Tabora feared being caught because the Internet connection was in his name. *Id.* The right thing for Mr. Tabora to have done, at that point, was to tell Mr. Whetstone that he could no longer use his Internet connection. ECF 1 ¶ 52, 55. Instead, Tabora allowed Whetstone to continue to use the connection and allowed him to do so, knowing Whetstone would continue to infringe upon the Plaintiffs' (and likely many others') copyrights. ECF 1 ¶ 4.

Had Mr. Tabora provided Mr. Whetstone with the instrumentality of any other offense, there would be no dispute that Tabora would be at least <u>partially</u> responsible for the Platiniff's damages. For example, if Mr. Tabora lent Mr. Whetstone his car, and Mr. Tabora was aware that Mr. Whetstone habitually drove drunk, and Mr. Whetstone eventually drunkenly crashed into someone, Tabora would be held at least partially liable. The fact that there is neither blood nor death nor photographs of damaged property in this case does not mean that Liberty suffered no harm. If people like Mr. Whetstone steal Liberty's wares and provide them to others on the open market place for free, then Mr. Whetstone is a thief. If Mr. Tabora <u>unwittingly</u> provided Mr. Whetstone with the tools of theft, he could, perhaps, be forgiven. However, that forgiveness melts away as Tabora's awareness of Whetstone's unlawful activity grows. Tabora was well aware of what Whetstone was up to and Tabora, nevertheless, preferred to collect a few dollars a month from Whetstone rather than refuse to allow an unrepentant law breaker to continue using his Internet connection.

Even if the fact pattern were more similar, but more dramatic, there would be no question that Mr. Tabora would be held liable. For example, imagine if Mr. Whetstone engaged in wire fraud, computer hacking, child pornography distribution, or any other

computer crime. There would be no dispute that if Mr. Tabora knew of these offenses and continued to allow Mr. Whetstone to use his Internet connection in order to further them, Mr. Tabora would be a co-defendant in any action. However, there is a perception by the defense that since Liberty is a company that makes pornographic films, especially pornographic films featuring gay men, that it is entitled to less justice than other victims. The Plaintiff hopes that this level of prejudice and a desire for differential justice will not come into play in this case. Liberty is a lawful business, a law-abiding business, employs many people who pay mortgages, grocery bills, and school tuition with the salaries they earn there. These jobs are threatened by people like Whetstone and people like Tabora who knowingly aid and abet them. While the <u>degree</u> of Tabora's liability is perhaps in question, and perhaps a finder of fact will believe that he has not breached a duty, the legal fact remains that the cause of action for negligence has been properly pled, it is not preempted, and this Court does not need to extend existing law by much more than a hair's width in order to make it clear that if you behave irresponsibly with your Internet connection, and knowingly allow others to use it for unlawful activity, you should expect at least some liability.

### III. ARGUMENT

The pending motion to dismiss presents two truly serious questions. First, whether there is a duty to prevent an individual from utilizing an Internet connection if it is known that they will engage in illegal acts with that Internet connection, and, second, if there is such a duty, is a negligence claim preempted by the Copyright Act.

### A. The Negligence Cause of Action is not Preempted, and is Distinct Enough to Survive as its Own Cause of Action.

Section 301 of the Copyright Act expressly preempts a state law claim only if (1) the work at issue "come[s] within the subject matter of copyright" and (2) the right being asserted is "equivalent to any of the exclusive rights within the general scope of copyright." 17 USC § 301(b); see *Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 892 (2d Cir. 2011). In order to establish preemption, Tabora must demonstrate that the complaint seeks to vindicate a "legal or equitable right [ ] that [is] equivalent to any of the exclusive rights within the general scope of copyright, as specified by section 106." 17 USC § 301(a). Section 106 gives copyright owners the exclusive right, *inter alia*, to reproduce a copyright work, to prepare derivative works, to distribute copies of the work to the public, and to display the work publicly. 17 USC § 106. A state law right is equivalent to one of the exclusive rights of copyright if it "may be abridged by an act which, in and of itself, would infringe one of the exclusive rights." *Harper & Row, Publishers v. Nation Enters.*, 723 F.2d 195, 200 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985). "But if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action," there is no preemption. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992) (internal quotations omitted).

In applying this "extra element" test, the Second Circuit has held numerous categories of claims to be outside of preemption. This includes trade secret claims, *Id.* at 717; "hot news" misappropriate claims because in those claims plaintiff must show time-sensitive factual information, free-riding by the defendant, and a threat to the very existence of the plaintiff's product, *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 853 (2d Cir. 1997);

5

and breach of confidential relationship, in which the plaintiff must show an obligation not to disclose ideas revealed in confidence, *Smith v. Weinstein*, 578 F. Supp. 1297, 1307 (S.D.N.Y. 1984), *aff'd without opinion*, 738 F.2d 419 (2d Cir. 1984). See also *Harper & Row*, 723 F.2d at 201 (in dictum, suggesting that conversion based on physical possession and control of a copyrighted work may not be preempted because such a tort involves "acts . . . qualitatively different from those proscribed by copyright law").

The Defendant is correct that 17 U.S.C. § 301 preempts actions for infringement other than those brought under the copyright act. The negligence cause of action at issue in this case, however, does not assert that the negligent party infringed on the copyright holder's copyright. To the contrary, the negligence cause of action claims that Tabora is liable for damage he caused by virtue of *others*' copyright infringement, since he knowingly permitted Whetstone to continue using the connection, despite possessing the knowledge that Whetstone used it for unlawful purposes. This is not an end-run around holding the proper party liable for infringement. The individual infringer is still liable and will still be held responsible for the infringement. However, the harm caused Tabora's negligence is a *sui generis* harm distinct from infringement under 17 U.S.C. § 501.

In short, negligence is not copyright infringement – it is a different animal. As all of the cases cited by the Defendant instruct us, a party cannot be held liable for infringement and negligence. On the other hand, if the two claims are divided among two parties, it is not federally preempted by 17 U.S.C. § 301. The Copyright Act only preempts state claims that are not qualitatively different from copyright infringement claims. *Id*. Negligence is, in Mr. Tabora's case, qualitatively different. He is not accused of violating any of the Plaintiff's § 106 rights.

While the inclusion of elements such as awareness and intent do not prevent federal preemption of state claims, such preemption applies only to claims "grounded solely in the copying of a plaintiff's protected expression." *NBA v. Motorola*, 105 F.3d 841, 851 (2d Cir. 1997). Where an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright – and thus there is no preemption. *Computer Assocs. Int'l v. Altai*, 982 F.2d 693, 716 (2d Cir. 1992). While requirements such as state of mind and awareness have not constituted extra elements that thwart preemption, "a state law claim is qualitatively different if it requires such elements as breach of fiduciary duty, or possession and control of [property]." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 306 (2d Cir. 2004) (internal citations omitted). In *Dielsi v. Falk*, 916 F. Supp. 985, 992-93 (N.D. Cal. 1996), the court rejected a negligence claim for the defendant failing to acknowledge the striking similarities between its script and the plaintiff's. The court held that the plaintiff's negligence claim was a copyright infringement claim in disguise.

Negligence claims are preempted by the Copyright Act when the infringer and the negligent party are one and the same. When the only plausible framing of a duty is that the negligence claim is based on a defendant's duty not to infringe on intellectual property rights, the Copyright Act preempts that claim. *Gary Friedrich Enters., LLC v. Marvel Enters.*, 713 F. Supp. 2d 215, 227-228 (S.D.N.Y. 2009); *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990). In considering preemption, the Ninth Circuit held that a court must determine whether the state law claim encompasses the subject matter of copyright (e.g., the right to reproduce, distribute and display the work) and must contain an additional element

that qualitatively transforms the action into something different than an infringement claim. *Wild v. NBC Universal, Inc.*, 788 F. Supp. 2d 1083 (C.D. Cal. 2011); Nimmer, Copyright § 1.01[B][1] ("Abstracting to the realm of principle, if under state law the act of reproduction, performance, distribution, or display, no matter whether the law includes all such acts or only some, will in itself infringe the state-created right, then such right is pre-empted."). In this case, there is that additional element. Tabora is not accused of reproducing, performing, distributing, or displaying the work. He is accused of allowing his roommate to do so, using his internet connection, with the knowledge that he would commit this unlawful act.

The second criterion for preemption is "equivalence" to federal copyright law; that is, if the state right is infringed by a mere act of reproduction, performance, distribution, or display. *Marvullo v. Gruner + Jahr AG & Co.*, 2001 U.S. Dist. LEXIS 266 (S.D.N.Y. Jan. 16, 2001). Merely recharacterizing a copyright infringement claim as one for negligence will not avoid federal preemption since the essential allegation is still that the defendant unlawfully copied the plaintiff's ideas. *Dielsi v. Falk*, 916 F. Supp. 985 (C.D. Cal. 1996). Therefore, a negligence claim against Whetstone would be preempted, but a claim against Tabora is not.

None of these are cogent, on-point refutations of the negligence claim in the instant action. The negligence claim is not the same as that in *Dielsi*, which asserted negligence against the direct infringer. In contrast, the negligence claim here is not against the direct infringer, and is not an attempt to re-cast an infringement claim. To the contrary, these claims clearly are claims against the individual who is *not* the infringer: Defendant Tabora. Tabora has breached a duty that allowed third parties to cause harm to copyright holders. That breach and resulting harm – not the infringement itself – is the cause of action being asserted by this

negligence claim. As it is at least one degree removed from any actual copyright infringement, recasting it as a restated claim against the infringer is simplistic and incorrect.

The simple fact is that an action for negligence is not an action for infringement – it is an independent claim. As such, there is no need to identify an additional element that qualitatively changes the claim into one for something other than copyright infringement. Assuming there is such a requirement under *Computer Associates*, there are two: the existence of a duty, and the defendant's breach of that duty. The instant action's claim of negligence is not a simple claim of infringement – instead, it targets those who have a duty and have breached it, allowing infringers to cause harm to the copyright owner – and those infringers will be dealt with in separate actions for infringement.

While there is a relationship between the negligence claim and actual copyright infringement, it goes further, and requires more, than mere infringement. Plaintiff acknowledges that the law in this area is not concretely settled. However, the copyright act does not preempt or preclude negligence actions against individuals who have a duty to reasonably prevent others from knowingly using their computer networks for piracy, and who breach that duty.

**B. Not Only is the Negligence Cause not Preempted, but it is Viable under Traditional Laws of Negligence.**

The question that remains, then, is where the duty arises from the open wireless network owner to the copyright holder.

Although the Court could, and should, recognize Tabora's duty, it should also note that this agreement contractually creates such a duty on Tabora's part. Time Warner Cable, the provider of Road Runner high speed Internet in New York City and Tabora's provider at

9

the time of the infringement, specifically bars its subscribers from utilizing their service for copyright infringement in their Acceptable Use Policy: "The ISP Service may not be used to upload, post, transmit or otherwise make available any materials or content that violate or infringe on the rights or dignity of others. These include, but are not limited to, materials infringing or compromising intellectual property rights …" (available at: http://help.twcable.com/html/twc_misp_aup.html)  In Time Warner Cable's Terms of Service they state that the subscription holder cannot assign their responsibility for the actions of the accounts to another individual: "Except with our consent, you may not transfer or assign (in other words, make another person legally responsible for) the **Services**, the **Customer Use Equipment** or your obligation to comply with our **Customer Agreements**." (available at: http://help.twcable.com/html/twc_sub_agreement.html)   Tabora's ISP has spoken, and deemed its subscribers to have a duty to keep their connections secure and limited and to prevent unlawful activity upon them.  It would certainly be a violation of the spirit, if not the letter, of this agreement to allow an individual that you know is unlawfully utilizing your Internet subscription to share that subscription.

      The thrust of these restrictions is not wholly, or even partially, to protect ISP's. Rather, they are to protect third parties, such as content creators, who are harmed by the actions of ISP subscribers.  The interest of this contractual duty is to protect parties like Liberty from the activities of people like Whetstone.  Tabora knowingly and willfully accepted this duty.  From the dawn of the Internet until now, these restrictions have crept into ISP terms and conditions and become progressively stronger to match the swelling tide of piracy.

By creating these policies, the ISP's have specifically contemplated the harms that individual subscribers can cause by allowing free reign over their Internet connections. Similarly, the ISP's have anticipated its subscribers sharing networks, and then mendaciously crying "it could have been anyone!" when a content provider comes knocking with a subpoena. Accordingly, a subscriber's privileges of network access are conditioned on not using its services as a piracy free-for-all – a policy put in place for the benefit of content owners.

When subscribers to ISP's with these terms allow other individuals that they know are violating the law, they breach this term of their contracts – and their duty to content producers to prevent others from causing them harm. Just as the owner of a car has a duty to the rest of the world if the owner knowingly loans the car to individual to use in concert with a crime – and is subsequently liable for harms that car causes – these terms and conditions impose similar restrictions on subscribers to Internet networks. A violation of these terms is a clear breach of this duty to the Internet, and particularly to content producers, making the network owner liable for the harms he or she could have prevented, and likely knew were occurring. At that point, the only question left is what the negligent subscriber's damages shall be.

### C. Is there a Duty to Stop Known Criminal Activity?

In an ever-evolving legal landscape, legal duties are constantly updating with technology. In *The T.J. Hooper*, 60 F2d 737 (2d Cir. 1932), the plaintiffs shipped two barges full of cargo, there was a storm, the barges sank and the cargo was lost. The defendants were the owners of the tugboats that were towing the barges. The plaintiffs claimed that since the tugboats did not have working radios that could have warned them about the storm, the tugboat operators were negligent. This was 1932, and radios were not required to be on the

ships by any law. Furthermore, it was not common custom for commercial ships to have them at this point, and only one company on the whole Eastern Seaboard used them.

Judge Learned Hand wrote the opinion in this case, and he stated that it did not matter that there was no law mandating their use. It did not even matter that shipping companies generally did not have radios. Hand wrote that it is the province of the courts to decide whether a duty exists, and it is not up to the affected group to make that decision. In circumstances of evolving technology, the duty may change along with technology, even if common practice does not.

More than 40 reported cases cite the reasoning in *T.J. Hooper*, including the United States Supreme Court in *Salem v. United States Lines Co.*, 370 U.S. 31, 37 (U.S. 1962). A Shepardization of the case shows that the case is cited again and again, in 864 sources. *T.J. Hooper* is a foundational case in the law surrounding duty of care in negligence cases. *See, e.g., Roberge v. Hannah Marine Corp.*, 1997 U.S. App. LEXIS 21655 (6th Cir. Mich. Aug. 13, 1997) (The *T.J. Hooper* case is Judge Learned Hand's "famous opinion," which is "followed almost universally"); *Cherokee Ins. Co. by & ex rel. Weed v. E.W. Blanch Co.*, 66 F.3d 117 (6th Cir. Tenn. 1995) (citing *T.J. Hooper* in discussing duty of care for examination of the financial strength of reinsurers); *Miyamoto v. Otis Elevator Co.*, 1994 U.S. App. LEXIS 14272, 4-5 (9th Cir. Haw. June 9, 1994) (injury involving an elevator).

United States District Courts in various jurisdictions have arrived at the same conclusion. *Tokio Marine Mgmt. v. M/V Zim Tokyo*, 1995 AMC 2263 (S.D.N.Y. 1995) (citing *T.J. Hooper* in finding that storage facilities had a duty to exercise more care than was the industry standard in securing shipping units, stating that "courts will hold a defendant to a higher standard than the industry practice if the evidence shows that the industry as a whole

has exercised less than what due care under the circumstances would require."); *Smythe v. Am. Red Cross Blood Svcs*, 797 F. Supp. 147, 152 (N.D.N.Y. 1992) (analyzing the T.J. Hooper case in evaluating the proper standard of care for the Red Cross and other blood transfusion services in screening for HIV; "the court is free to hold a given defendant to a higher standard of care than that adopted by the applicable profession").

Not only is the duty one is owed a legal creation, it is one that judges create without being bound to industry practices or statutes articulating a standard of care lower than one reasonably necessary to protect the interests of others. One of the best-known principles of tort law—a principle that received its canonical expression in an admiralty decision written by Learned Hand, is that compliance with custom is no defense to a tort claim. *Rodi Yachts, Inc. v. National Marine, Inc.*, 984 F.2d 880, 888 (7th Cir. 1993) (citing *T.J. Hooper*, 60 F.2d at 740). An industry's standard of care is not dispositive of due care. *Shadday v. Omni Hotels Mgmt. Corp.*, 477 F.3d 511, 514 (7th Cir. 2007); *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288 (6th Cir. 2007); *Mesman v. Crane Pro Servs.*, 409 F.3d 846 (7th Cir. 2005); *Magarian v. Hawkins*, 321 F.3d 235 (1st Cir. 2003); *Spitz v. Boston Edison Co.*, 2 Mass. L. Rep. 558 (Mass. Superior Ct. 1994) (citing the T.J. Hooper case in finding that industry norms and statutorily required practices are not dispositive as to what duty is owed, and the standard of due care for a utility to replace damaged electrical wiring is higher than both).

*T.J. Hooper* stands for the principle that common custom and prevailing "bare minimum" practices do not necessarily determine the duty of care. The courts determine the duty of care, and not infrequently find that the standard rests a fair bit higher than the standard conduct of average people – and even entire industries.

13

Internet subscribers have a duty to adequately secure their connections and, at the minimum, deny access when they have knowledge of criminal activity taking place on those connections. Since the dawn of widespread, high-speed web access, the Internet's useful purposes have been shadowed by a bazaar of piracy and copyright infringement. Based on traffic alone there is nearly a one-in-four chance that any Internet user is using the web for piracy at any given time.[1] The anonymity provided by using another person's Internet connection, even a roommate's, drives up the likelihood that the unauthorized user is using the web for illegitimate or unlawful purposes.

The widespread use of the Internet for infringement is no secret to anyone, and the logic that someone wishing to engage in unlawful activity would seek to conceal their identity by borrowing another's – namely through utilizing an Internet subscription belonging to someone else – is inescapable. Tabora knows what happens on the Internet, knew what was happening on the Internet connection he was responsible for, and at this point should know he served as a ripe conduit for rampant, consequence-free infringement. Just as motorists who leave their car parked, unlocked and running know they are somewhat liable for damage caused by a carjacker, owners of networks should know they are liable for the actions of third persons hopping into their unsecured and running vehicle to the Internet, where they can cause just as much damage – if not more.

### D. The Name of the Motion Picture at Issue

Fed. R. Civ. Pro. 8 requires a short and plain statement of the grounds for the court's jurisdiction and a short and plain statement of the claims showing the Plaintiff is entitled to

---

[1] See CNBC article available at:
http://www.cnbc.com/id/41356625/Piracy_Rules_the_Web_Dominating_23_8_of_Internet_Traffic

14

relief. Mr. Tabora claims that since the actual work infringed upon is entitled "Corbin Fisher's Down on the Farm" or "Down on the Farm," yet the attached copyright certificates are for "Corbin Fisher, Amateur College Men; Down on the Farm" that the Plaintiff has not properly pled its copyright action. It is clear that Mr. Tabora is aware of which film is at issue and, thus, the pleading requirement of Rule 8 has been met. In fact, the first paragraph of the complaint lists the correct copyright registration number: PA 1-698-357. In the event that Mr. Tabora is actually confused about which movie is at issue, the Plaintiff requests leave to amend its complaint to change the title of the film to the same title listed in the copyright certificate.

## IV. CONCLUSION

In this case, the issue is whether a negligence cause of action against Mr. Tabora can survive preemption. There are several key differences between a negligence claim and a copyright violation claim. First, while the copyright Act provides for strict liability, it does not provide for vicarious liability if there is no financial benefit to the vicarious infringer.[2] Second, negligence causes of action have only been preempted by the Copyright Act when the negligence claim is against the same individual who violated one of the plaintiff's rights under the Copyright Act (e.g., the right to reproduce, distribute and display the work).

---

[2] That has been alleged in this case in the contributory copyright infringement sections, however, the negligence claim is pled in the alternative in the event that this financial connection cannot be established, the plaintiff still believes that Tabora should be held to be negligent.

15

Additionally, Plaintiff will amend the complaint to rectify the issue of the naming convention of the film, if the Defendant truly lacks notice under the Copyright Act as to which film is at issue. For these reasons, the Motion to Dismiss should be denied.

Dated: New York, New York
      July 5, 2012

                                  **NESENOFF & MILTENBERG, LLP**
                                  **Attorneys for Plaintiff**

                     By:        /s/
                                  Andrew T. Miltenberg, Esq. (AM 7006)
                                  Marco A. Santori, Esq. (MS 7422)
                                  363 Seventh Avenue, Fifth Floor
                                  New York, New York 10001
                                  (212) 736-4500